25 CV 6339

## UNITED STATES DISTRICT COURT WESTERN DISTRICT OF NEW YORK

1. CAPTION OF ACTION

DOE and JOHN                                              Plaintiff

v.

University of Rochester, M. STRIKS, BADGE # 538,  BADGE # 1935, PUBLIC SAFETY A.
BONANNI #8198, Security Guard Female 1, Security Guard Female 2, Security Guard NOBLE,
Security Guard 169,

Defendants

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

I. The Parties to This Complaint

A. The Plaintiff no. 1
    Name JOHN DOE
    Address ROCHESTER NY
    County/City: MONROE/CITY OF ROCHESTER
    Telephone Number
    E-Mail Address

   The Plaintiff no. 2
    Name JANE DOE
    Address ROCHESTER NY
    County/City:  MONROE/CITY OF ROCHESTER
    Telephone Number
    E-Mail Address

   B.   The Defendant(s)
    Defendant No. 1
    Name UNIVERSITY OF ROCHESTER
    Job or Title UNIVERSITY OF ROCHESTER
    Address  601 Elmwood Avenue, ROCHESTER  NY 14642
    County MONROE
    City ROCHESTER
    Telephone Number 585-275-2121

       The Defendant no. 2
    Name M. STRIKS, BADGE # 538
    Job or Title PUBLIC SAFETY
    Address  601 Elmwood Avenue, ROCHESTER  NY 14642
    County MONROE

City ROCHESTER
Telephone Number 585-275-3333

The Defendant no. 3
Name A. BONANNI #8198, (female)
Job or Title PUBLIC SAFETY
Address 601 Elmwood Avenue, ROCHESTER  NY 14642
County MONROE
City ROCHESTER
Telephone Number 585-275-3333

The Defendant no. 4
Name 4 UNNAMEL PUBLIC SAFETY PERSONNEL
Job or Title PUBLIC SAFETY
Address 601 Elmwood Avenue, ROCHESTER  NY 14642
County MONROE
City ROCHESTER
Telephone Number 585-275-3333

The Defendant no. 5
Name  BADGE # 169 (true name is not known)
Job or Title PUBLIC SAFETY
Address 601 Elmwood Avenue, ROCHESTER  NY 14642
County MONROE
City ROCHESTER
Telephone Number 585-275-3333

The Defendant no. 6
Name  Doctor James L (true name is not known)
Job or Title admitting physician
Address 601 Elmwood Avenue, ROCHESTER  NY 14642
County MONROE
City ROCHESTER
Telephone Number 585-275-2121

II. Basis for Jurisdiction
Under **vicarious liability or "respondeat superior".**, false arrest, false imprisonment section 1983 claim)

B. Fourteenth Amendment due process violation

(I)Constitutional right – Assault and Battery state claim – under the Fourth amendment and article I 12 of the NYS Con.

D . Section 1983 allows defendants to be found liable only when they have acted "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983. If you are suing under section 1983, explain how each defendant acted under color of state or local law.

E. Malpractice, negligence, Duty of Care

F. Failure to train, failure to supervise

G. State action

III. Statement of Claim

State as briefly as possible the facts of your case. Describe how each defendant was personally involved in the alleged wrongful action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims. Do not cite any cases or statutes. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A. Where did the events giving rise to your claim(s) occur?

NYS Mental Health and Wellness,  300 Crittenden Rochester NY 14642 and at the public safety office

B. What date and approximate time did the events giving rise to your claim(s) occur?

MARCH 22, 2025. The approximate time of the event is 6:00 p.m.

C. What are the facts underlying your claim(s)? (For example: What happened to you? Who did what?   Was anyone else involved? Who else saw what happened?)

Plaintiff **Jane Doe** was admitted to **Mental Health and Wellness** following a traumatic car crash on **March 17, 2025**. Jane Doe did not want to hurt myself or anyone. It was the second time in recent history that she had experienced a near death experience and lost it wondering my purpose in life and was emotional. Although she sustained no broken bones, the emotional impact of the crash shook her deeply. Overwhelmed by the incident, her mother brought her in for evaluation the following day. Jane Doe was admitted by **Dr. James L.**, the admitting physician, who thereby owed her a **legal duty of care** pursuant to the doctor–patient relationship. Jane Doe's mother thought is was best because she did not understand what she was going through.

Dr. James L. conducted the initial evaluation and determined that Doe required in-patient assistance. However, he **breached that duty** by failing to follow the legally required two-step process under New York mental health law and regulations. If Dr. James L had asked another physician to confirm his assessment, Jane would had been sent home that day or in 48 hours. Specifically, after signing **Page 1 of Form OMH-474**, Dr. James L. improperly signed **Page 2** of

the same form as well—falsely identifying himself as both the **Admitting Physician** and the **Staff Physician**. This violates procedural safeguards under **Mental Hygiene Law § 9.39**, which requires that a second, independent physician confirm the need for hospitalization. This action benefited the university of Rochester, but did not benefit Jane Doe, so there was failure.

By impersonating the Staff Physician, Dr. James L. created a **fraudulent record** that made it impossible to determine whether Doe's stay was truly voluntary or involuntary, or even necessary. What it did was guarantee that Jane Doe would stay for over 15 days and the University of Rochester would get paid. This is disgusting. This procedural fraud placed Doe at **significant risk** of continued unlawful confinement and pharmaceutical drug use. During her stay, Doe was administered powerful psychiatric medications daily against her will. She felt she had to comply with all the security around. She repeatedly asked to be discharged, but the **University of Rochester** refused to release her, and Dr. James L refused to sign off on the release. If there was proper supervision, the U of R, would have known that Jane was not legally confined, that her confinement was without her consent and the university of Rochester did not have privilege to confine her, prolonging her confinement without lawful authority stating that the physician who was supposed to release her was not available.

Jane Doe wanted to leave and felt trapped and alone, but the staff told her that she could not leave. It was the confinement that made jane doe so furious and she began to feel sick that she was trapped in narrow corridors. Just speaking to her about her experience in confinement maked her cry because she felt 'hopelessness', trying to leave a place that is a jail, feeling trapped and there was nothing that she could do to go home. Jane had never tried to bang on a window until it hurt and decided not to take anymore of the drugs they were giving her. Jane told the staff that she wanted to leave every day and all she got was excuses that the person in charge was not in that day.

Jane Doe's father, **John Doe**, who holds **power of attorney**, visited her after she expressed her desire to leave and told the staff that she needed to leave every day. During the visit, John Doe requested all admission paperwork and was provided Form OMH-474. Upon reviewing it, he noticed that **both pages were signed by the same physician**—Dr. James L.—in violation of the statutory procedure. When he pointed this out to staff and nurses, they dismissed his concerns and insisted that Jane was not permitted to leave, two physicians needed to sign off on it, despite the obvious procedural irregularities. There was no legal confinement to there was no need for a court or two physicians to sign any documents for her release. See the law in section 9.39.(unable to attach due to HIPAA.

John requested to speak with a supervisor and asked staff to return his cellphone so he could contact 911. Staff refused, stating that phones were not permitted inside the facility and that he would have to leave before receiving it back. John left with a nurse then she left him out side without his phone and asked to be let back in by a staff member who did let John back in. When John persisted in requesting his phone and Jane's release, **Public Safety guards**, including one identified as M. **STRIKS Defendant 2, and individual badge #169**, Defendant 5, arrived and

escorted john toward the exit without his phone. John tried to explain that the paperwork was not proper and that they should aid him to release Jane Doe, but they were stone faced.

As John was being escorted outside, John asked for his phone, STRIKS abruptly shouted **"resisting arrest"** and proceeded to physically restrain him, forcing him to the ground without explanation. John, confused to be handcuffed because he was not under arrest and there was no reason for him to be tackled to the ground. Graham v. Connor standards of reasonableness was ignored as they were not real police officers. John asked why he was being arrested. STRIKS replied, **"Disorderly conduct"**, which was absurd. While John lay on the ground, he informed the 'officers' again that he was injured in a prior incident so cuffs were not allowed, and he should not be handcuffed, especially given that he had been cooperative and was leaving to go call the police. Defendant 2 and 5 seemed to have no training in de-escalation and listening. I told them that I was injured so it should had been enough to deescalate and calm the situation down. John was already on his way outside without his phone.

Despite this, STRIKS—who appeared to weigh over 350 pounds—**sat on John's back square on the pelvic region**, as if he was riding a pony. This caused extreme pain. Unable to withstand the pressure and pain, John submitted his injured wrists to be cuffed in his back, defendant 2 had no conscience or concern for Johns plea that he was injured and yanked his arms back causing excruciating pain in his shoulders, more so his left shoulder, back and wrists. The excessive force applied caused John to **urinate involuntarily** in the patrol vehicle due to the compression of his bladder. Month later john would still have bladder control issued and would need to rush to the restroom as soon as he stood up and John had to wear a diaper to bed.

During the ride to the public safety headquarters, STRIKS drove recklessly, making sudden turns and accelerating sharply. When John asked him to slow down due to the pain from the tight, uneven handcuffs, and being tossed around, STRIKS retaliated by driving more aggressively. At one point, STRIKS told John, **"You should do what you're f---ing told,"** when john asked why did you arrest me? an unprovoked verbal abuse that further dehumanized and humiliated him.

Upon arrival at the Public Safety facility, **John asked that Officer STRIKS not touch him** due to the pain he was experiencing. A **female officer** then took over custody. However, while attempting to assist John—who was clearly in pain and moving slowly—**she bent his right wrist**, inflicting additional pain **without justification**.

John was then **handcuffed to a bench for approximately 30 minutes**, during which he repeatedly requested to be released. Despite his pleas, **Officer Anderson** told him he would **"have to wait"** to be released from the restraints. During his detention, John reported to Anderson that **Defendant 2** had used **condescending and racially charged language**, speaking to him as though he were a child or subordinate. Nothing was done about it, which is a failure to train and supervise as Anderson was the supervisor. John expressed concern about the officer's tone and language, but **no action was taken**, and it is unclear whether "Anderson" was even the officer's real name.

In the days and weeks that followed, John experienced **pain, swelling, and loss of mobility** in his wrists, back, pelvic area, and sides. Medical evaluation revealed **blood in his urine**, and he began **physical therapy** for wrist and hip injuries. His therapist noted signs of muscle tearing and weakness in the pelvic region. Even after multiple sessions, John continued to suffer from **lower back pain, incontinence, and restricted movement**.

To this day, John struggles with frequent urination, pain when bending, and persistent discomfort in specific areas of his back and sides when sleeping and getting up or sitting done.. These injuries are directly traceable to the **excessive force** used by STRIKS and others at the University of Rochester. John's physicians continue to monitor his recovery, and he remains under physical therapy treatment. The therapy is helping. John notices a great improvement, but it is still painful at each side, wrists and middle and lower back, especially when john bend down and over to pick something off the ground.

Furthermore, the Public Safety officers **misrepresented themselves as real law enforcement officers**, falsely claiming they were "real police." Their conduct—detaining John without legal authority and using excessive force—constitutes a **violation of 42 U.S.C. § 1983**, and subjects them to liability for **false arrest, excessive force, and impersonation of law enforcement**. The public safety personnel had no privilege to arrest or to use tight handcuff or handcuff John to a bench. John informed the public safety personnel that his back was killing him and it was so bad john had to lay on his back still chained to the bench by his wrist.

Plaintiff **Jane Doe** was ultimately released on **April 15, 2025**, and cried in relief when she was finally free, but not before suffering significant psychological and emotional distress as a result of the University's improper admission and forced medication. It was an ordeal that no one should experience if they are sad or depressed. The fraudulent admission procedure and continued confinement violated her constitutional rights under **the Due Process Clause** of the Fourteenth Amendment, as recognized in **Schloendorff v. Society of the New York Hospital**, 211 N.Y. 125 (1914), which affirms that **every human being of adult years and sound mind has a right to determine what shall be done with their own body**.

**Claim 1: Defendant 2 - assault and battery, false arrest, false imprisonment, excessive use of force, tight handcuffs fourteenth amendment due process violations,**

**Claim 2: Defendant 1 - malpractice, vicarious liability or "respondeat superior", failure to train, false detention, false imprisonment, unreasonable search and seizure. private physicians does constitute state action under the close nexus.**

**Claim 3: Defendant 5 - assault and battery, false arrest, false imprisonment, excessive use of force, tight handcuffs fourteenth amendment due process violations**

**Claim 4: Defendant 6- malpractice, fourteenth amendment due process violations,**

**Claim 5: Defendants 4 - failure to intervene**

**Claim 6: Defendants 3 - excessive use of force**

IV. Injuries

If you sustained injuries related to the events alleged above, describe your injuries and state what medical treatment, if any, you required and did or did not receive.

John suffered tearing of his pelvic and hip muscles, persistent pains in wrist and back. The pains are still ongoing. humiliation as the seizure was in public, damage to reputation as daughters were watching and bystanders observed the abuse of authority. Jane is suffering from the confinement as if she was in jail and the result of taking the medication has made her think slowly.

V.  Relief

Basis for Relief: Defendants be made personally responsible for his involvement in conducting an unreasonable search and seizure, false arrest, false imprisonment.

Award a judgment and order Defendant (1) to pay monetary damages. Compensatory damages of $15,000,000.00 and Punitive damages of $2,000,000.00. Total Relief Requested: $17,000,000.00

Award a judgment and order Defendant (2) to pay monetary damages. Compensatory damages of $3,000,000.00 and Punitive damages of $2,000,000.00.  Total Relief Requested: :$ 5,000,000.00

Award a judgment and order Defendant (3) to pay monetary damages. Compensatory damages of $1,000,000.00 and Punitive damages of $1,000,000.00.  Total Relief Requested:$ 2,000,000.00

Award a judgment and order Defendant (4) to pay monetary damages. Compensatory damages of $1,000,000.00 and Punitive damages of $1,000,000.00.  Total Relief Requested:$ 2,000,000.00

Award a judgment and order Defendant (5) to pay monetary damages. Compensatory damages of $3,000,000.00 and Punitive damages of $2,000,000.00.  Total Relief Requested:$5,000,000.00

Award a judgment and order Defendant (6) to pay monetary damages. Compensatory damages of $5,000,000.00 and Punitive damages of $2,000,000.00.  Total Relief Requested:$7,000,000.00

For the cumulative violations of my constitutional and statutory rights, including assault and battery, among other injuries, the Plaintiff John Doe and Jane Doe seek a total of $40,000,000.00 in damages. Each violation represents a separate and distinct harm that warrants full compensation under the law and the courts attention. M. Striks should be fired as incompetent and is peace officer's certificate revoked.

The District Court is to liberally construe the meaning of the complaint and add any and all appropriate claims based on the facts pled in the four corners of the complaint. The Court is not to usurp the jury's role in weighing evidence and must take all facts pled as true; all facts must be viewed in the best light for the Plaintiffs and the injured parties. Private servants since they pretended to be public servants should be charged as such as they must not derive any benefit from their positions as private servants in any manner and must be found liable if their actions conducted under color of law violated established law, constitutional rights, or statutory rights. The Seventh Amendment must not be violated; therefore, this matter may not be dismissed as the Plaintiffs have a right to a jury trial.

The Court is asked to allow the Plaintiffs to amend the complaint after all discovery, including personnel files and interrogatories, have been served and received.

VI. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically, so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Do you want a jury trial? Yes __XX__ No _____

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _June 20, 2025_

John Doe and Jane Doe

Sworn To mp
June 20, 2025

Irwin H. Harris
Notary Public, State of New York
Reg. No. 04HA4854702
Qualified in Monroe County
Commission Expires 03/24/20